# COMPLAINT
(for non-prisoner filers without lawyers)

## UNITED STATE DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

(Full name of plaintiff)

Rod Salinger

(Plaintiff)

v

Case Number:

**24-C-1417**

(to be supplied by Clerk of Courts)

(Full name of defendants)

| | |
|---|---|
| Andrew Lawler | (Defendant Lawler) |
| Doubelday | (Defendant Doubleday) |
| Knopf Doubleday Publishing Group | (Defendant Knopf Doubleday) |
| Penguin Randon House LLC | (Defendant Penguin Randon House) |

## A. PARTIES

1. Plaintiff Salinger is a citizen of Wisconsin and has a service address of 2800 Enterprise Way, Appleton WI 54913.

2. Defendant Lawler is an author and private person who resides at 16 Courtland Ave, Asheville, NC 28801

3. Defendant Doubleday is a publisher and a division of a corporation with its head office located at 1745 Broadway, New York, NY 10019.

4. Defendant Knopf Doubleday is a publisher and is a corporation with its head office located at 1745 Broadway, New York, NY 10019.

5. Defendant Penguin Randon House is a publisher and a corporation with its head office located at 1745 Broadway, New York, NY 10019.

Case 1:25-cv-00293-MR-WCM    Document 1    Filed 11/04/24    Page 1 of 10

## B. STATEMENT OF CLAIM

6. The Plaintiff Salinger ("Plaintiff") is a director of not-for-profit organization called Peace Strategies Foundation which is involved in a proactive peace-making effort in the Middle East. The Plaintiff is also setting up a university accredited archaeology school in Israel. He is also involved in as a project engineer for the design and production of training aircraft.

7. The Defendant Lawler and either of, or all, Defendant Doubleday, Defendant Knopf Doubleday and Defendant Penguin Random House either singularly or jointly (the "Defendants") did in late 2021 cause the publication of a book titled "Under Jerusalem by Andrew Lawler "(the "Book") with deliberate and malicious intent to make a profit by harming the Plaintiff by defaming him with sensational allegations that were not true.

8. The defamation by the Defendants was in writing and included statements that the Defendants knew or should have known were untrue being as false and misleading including:

    a. an accusation that the Plaintiff committed a crime, where no such crime ever took place,

    b. an accusation that Interpol had accused the Plaintiff of a serious crime, when no such accusation by Interpol was ever made,

    c. false and misleading statements including the Plaintiff selling "weapons" to make money,

    d. erroneous accusations as to private religious affiliation of the Plaintiff that were carefully designed to create ill feeling,

    e. an accusation that the Plaintiff was a treasure seeker,

    f. inferring that the Plaintiff was mentally ill and crazy in the mind,

    g. highly insulting comments of a religious nature

    (Collectively the "Defamation").

    The specific details of the Defamation which will be further elaborated on herein.

9. Part of the Defamation constitutes primary fundamental antisemitism, defined as lies that cause hatred and ill feeling against Jewish people and those who support Israel. The

antisemitism found in the Defamation is a violation of Title VI of the Civil Rights Act of 1964.

10. The Plaintiff is setting up an accredited archaeology department of the organization Toras Yeshiva Yisroel ("TYT") which is an IRS approved charitable organization operating as Diaspora Yeshiva. TYT offers university accredited Bachelor of Arts courses in conjunction with leading American universities.

HISTORY of the DEFAMATION

11. The Plaintiff was invited to meet the Defendant Lawler in about early July, 2019 at an office at 2 Maale Shzach in Jerusalem, Israel. The Plaintiff was todl that a reporter from National Geographic wanted to meet him. The meeting was attended by another person who is a judge in the State of Israel. The meeting lasted for about 45 minutes.

12. At the outset the Defendant Lawler introduced himself as a writer preparing an article on archaeology in Jerusalem for the publication National Geographic. The Defendant Lawler touted the credibility of National Geographic and did not say anything about his intended privately writing a book for his own benefit.

13. The Defendant Lawler deceived the Plaintiff into believing that he was working for National Geographic which is a reputable organization. Had Defendant Lawler informed the Plaintiff at the meeting, that he was writing a book for his benefit, the meeting would have been declined by the Plaintiff.

14. The Defendant Lawler then wrote a book called "Under Jerusalem" that contains the Defamation against the Plaintiff.

15. Under Jerusalem has been published jointly or severally by either of the Defendant Doubleday, the Defendant Knopf Doubleday, and the Defendant Penguin Random House (the "Publishers").

16. Under Jerusalem was first published on November 2, 2021.

17. Although the Defendant Lawler had the Plaintiff's postal address, email address and phone numbers, he did not inform the Plaintiff of the publication of Under Jerusalem (the "Book") at any time, nor did Defendant Lawler make any attempt to verify what he was writing about the Plaintiff by contacting the Plaintiff before publication.

18. It was not until near the end of 2022 that the Plaintiff became aware of the Defamation published in Under Jerusalem. At the time the Plaintiff was looking after his elderly mother of 100 years of age who was suffering from ill health throughout 2022 and into mid 2023.

19. Prior to publishing the Book the Publishers acted in a reckless manner and did not make any effort to contact the Plaintiff to verify the accuracy of the allegations of criminality and other accusations made against the Plaintiff by the Defendant Lawler.

20. Under Jerusalem is for sale on many book stores and online platforms such as Amazon and Google, and it. has been widely published with a good number of sales of the Book made in the state of Wisconsin.

IMPACT OF DEFAMATION

21. Unknown to the Plaintiff until late 2022 the Defamation had severely and negatively affected the Plaintiff's ability to earn an income..

22. In particular the Defamation detrimentally affected progress of Peace Strategies Foundation's major Middle East peace initiative between Israel and a nearby well known Muslim country, where the Defamation falsely alleged that an artifact (an antique door) central to the Peace Strategies Foundation program has been stolen and illegally exported by the Plaintiff from Israel.

23. The Defamation has caused significant harm and financial loss to the Plaintiff including, loss of income, emotional stress and damages.

24. The Defamation is the sort of Jew hatred and vilification that appeases the likes of Iran, Hezbollah and other terrorist organizations and thereby works against the stated foreign policy of the United States in creating peace in the Middle East.

DETAILS OF THE DEFAMATION

25. **1st act of Defamation:**

The Defamation found at page 331 Chapter 21 of the Book makes a false allegation that Interpol accused Plaintiff Salinger of illegally exporting a door (the "Door") that once led to the room above the traditional made a fortune on Minerals, wine and weapons. He book states, quote::

> *Not long after, Interpol accused the Australian [Salinger] of illegally exporting a door that once led to the room above the traditional Tomb of David, which many Christians; consider the site of Jesus's Last Supper.*

26. The said Door was given to the Plaintiff by a representative of the Ministry of Religion in Israel as a thank you gift for significant charitable work done by the Plaintiff to help others.

27. Contrary to the allegations of the Defendant Lawler, the Door was exported from Israel in a proper and transparent manner with full authority of the State of Israel and only after being inspected by the Israel Antiquities Authority who cleared it for export.

28. In late 2018 the Door was sent to the United States and properly imported.

29. Neither of any of the Israeli Police, the United States or police of any other country has ever accused the Plaintiff Salinger of illegally exporting the Door from Israel.

30. The allegation that Interpol accused the Plaintiff Salinger of illegally exporting the Door from Israel is a bald faced lie designed to create ill feeling toward the Plaintiff. The irrelevant mention of the Plaintiffs religion makes the allegation an act of fundamental antisemitism.

31. The Door is now being covered in gold as a central part of a museum display called the Door of Tolerance, that will be a high value diplomatic gift from the people of United States and Israel to the Muslim leaders of a major Islamic country.

32. The false allegations of the Defendant Lawler have caused a major impediment to the Door of Tolerance Project.

33. **2nd act of Defamation**

34. At page 332 Chapter 21of the Book the Defendant Lawler makes a blatantly false statement saying , quote:

> *"They say it was stolen and that it was ancient " Salinger said later.*
> *"But its not true; it was not an antique " Nevertheless, the IAA forbade*
> *any of its employees from working with him until the matter was resolved.*

35. Plaintiff has never said, *"They say it* [the Door] *was stolen and that is was ancient.*

36. The Plaintiff has never said the Door was not an antique. Any allegation that the door is not an antique affects the Plaintiff. Contrary to the allegation of the Defendant Lawler that door was in fact imported into the United States as an antique door.

37. The Defendant Lawler's allegation that the IAA (Israel Antiquities Authority) forbade any of its employees from working with the Plaintiff is false and defamatory.

38. Amit Re'em (referred to as Re'em in the Book) is Dr. Ami Re'sm who is the head of the IAA for the Jerusalem area, and was the actual person who inspected the Door before it was exported from Israel. The inspection of approval of Amit Reem of the IAA enabled the door to leave Israel.

39. The IAA have since specifically denied referring any issue of the Door being illegally exported form Israel, to either the Israeli Police or to Interpol.

40. The Plaintiff has travelled between the United States and Israel more than 6 times in the last few years and has never been stopped or asked about the Door.

41. The Plaintiff has no police record for any crimes in Israel, hence Interpol were never involved, nor did they make any accusations against the Plaintiff about the Door.

42. 3rd act of Defamation

    On page 331 Chapter 21 of the Book the Defendant Lawler makes a false allegation about the Plaintiff where he says quote:

    *At first, Re'em was encouraged by Goldstein's willingness to allow excavations beneath yeshiva land and Salinger's apparently deep pockets. He backed out when Salinger insisted on a major role in the actual dig.*

43. The Plaintiff has only been involved in one archaeological project in Israel and that was with Dr. Amit Re'em in 2018 where the Plaintiff and Dr. Re'em were the only workers. At the project site, the Plaintiff was the lead technical person for the equipment used and taught Dr. Re'em how to operate it.

44. The association between Dr. Re'em, the IAA and the Plaintiff has been cordial at all times before and since. The Defendant Lawler's allegation that Dr. Re'em backed out is false and defamatory.

45. 4th act of Defamation

    On page 331 Chapter 21of the Book the Defendant Lawler alleges that the Plaintiff makes erroneous allegations about the Plaintiff's religion in order to associate him with a character by the name of Wyatt where he says, quote:

    *Like Wyatt, the Australian had grown up a Seventh-day Adventist, the sect that believed the discovery of the Ark "would signal the start of the End Times".*

Page 6 of 10

Case 1:25-cv-00293-MR-WCM    Document 1    Filed 11/04/24    Page 6 of 10

46. The Plaintiff had not grown up a Seventh Day Adventist. The Plaintiff had grown up in a Jewish home. The Plaintiff's mother is buried in Israel. The Plaintiff was encouraged by his family to have a well rounded religious education grew up in a religious Christian neighbourhood and regularly went to Church of England (Episcopalian Church )Sunday School and Church services, went to mass at Catholic Church, prayed in Mosques with Muslims friends from Pakistan, attended Baptist Churches, went to the Church of Christ, and a attended a fundamental Pentecostal congregation speaking in tongues. The Plaintiff got married a Seventh Day Adventist lady, but because of his non approved status the marriage was not allowed to be in a Church.

47. The statement of the Defendant Lawler that the Seventh Day Adventist Church believes that the discovery of the Ark "would signal the start of the End Times is false and derogatory.

**48. 5th act of Defamation**

On page 332 Chapter 21the Defendant Lawler makes statements alleged to the Plaintiff that are not true and in one case which have a sexual overtone where he states

> *There is a Russian spy trying to destroy everything. She is in a very top position. They stole five hundred thousand dollars earmarked for this project. It was a shock to discover that the honey pot was gone.*

49. The Plaintiff never talked with the Defendant about a Russian spy being in a very top position, nor about there being honey pot that was gone. The use of the term "honey pot was gone" in the vernacular refers to a Russian female lure by sexual means that was gone.

**50. 6th act of Defamation**

On page 332 Chapter 21the Defendant Lawler makes statements alleged to the Plaintiff that are not true and that infers secret nighttime archaeology operations where he states, quote:

> *And there are others —treacherous bastards—trying to make secret excavations at nighttime to beat us to the punch." He paused. "Everything I tell you is dinky-di," Australian slang for "on the level."*

51. The Plaintiff never said anything to the Defendant Lawler about others making "secret excavations at nighttime to beat us to the punch".

52. All excavations in Israel are done in accordance with proper science and with permits issued by the IAA and there is no such thing as beating someone to the punch.

53. Defendant Lawler deliberately denigrated the science of archaeology in order to make the otherwise dry subject of archaeology a bit more sensational.

54. The Plaintiff never uses the words "dinky-di".

55. **7th act of Defamation**

56. On page 332 Chapter 21 of the Book the Defendant Lawler states, quote:

> *Yehiel Zelinger, an IAA archaeologist who has collaborated with and befriended Wyatt's followers. "It is an obsession." He should know; his wife is a psychologist who has worked with Jerusalem Syndrome patients.*
>
> *But Spielberg shouldn't shoulder the full blame; the Hollywood director only modernized and amplified an old and powerful legend that mixed spiritual longing with earthly rewards. "Nothing changes," said another Israeli archaeologist. "Crazy people with money come from the West to find treasure - and the locals are ready to exploit them."*

57. The Defendant Lawler penned his final words of Chapter 21 to infer that the Plaintiff is a follower of Wyatt with an obsession and is one of the crazy people coming form the West to find treasure and that the local Jewish people exploit them. All of which is not true.

## C. JURISDICTION

58. This court has subject matter jurisdiction under the statues, constitution and laws of the United States and the state of Wisconsin, namely through:

    a. Diversity of jurisdiction pursuant to US.C. 28 § 1332. Diversity of citizenship of the Plaintiff and the Defendants ;

    b. Controversy and damages sought by the Plaintiff exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

    c. Title VI of the Civil Rights Act of 1964 that prohibits discrimination based on religion and national origin.

59. Wisconsin Statutes, Section 895.05 defines defamation as being:

- A false statement
- Communicated to someone other than the person defamed, through speech, conduct, or in writing
- The communication is unprivileged and defamatory, meaning it has the potential to harm someone's reputation

60. Wisconsin Statutes, Section 942.01 defines defamation as:

(1) Whoever with intent to defame communicates any defamatory matter to a 3rd person without the consent of the person defamed is guilty of a Class A misdemeanor.

(2) Defamatory matter is anything which exposes the other to hatred, contempt, ridicule, degradation or disgrace in society or injury in the other's business or occupation.

## D. RELIEF WANTED

61. An order for the offending libel in the Book to be removed from all future publications

62. An order that all unsold copies of the Book be removed from sale and destroyed

63. An order for a public retraction and apology of the libel in the Book.

64. Damages in the amount of 3 years of lost income of at least $240,000 per year

65. Punitive damages of at least $1 million.

## E. JURY DEMAND

66. I want a jury to hear my case

## F. CERTIFICATION and CLOSING

67. Under Federal rule of civil procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harrass, cause unnecessary delay, or needlessly increase the

cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of rule 11.

68. For Parties Without an Attorney

I agree to prove the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

I declare under penalty of perjury that the foregoing is true and correct

Complaint signed this 2nd day of November 2024.

Respectfully Submitted

_Signature of Plaintiff_

347-209-0882

Plaintiff's Telephone Number

rod.salinger@peacestrategies.org

Plaintiff's Email Address

Rod Salinger
2800 Enterprise Way,
Appleton WI  54913

(Mailing Address of Plaintiff)

**I DO NOT** request that I be allowed to file this complaint without prepaying the filing fee under 28 U.S.C § 1915 and I have included the full filing fee with this complaint.

Page 10 of 10

Case 1:25-cv-00293-MR-WCM    Document 1    Filed 11/04/24    Page 10 of 10