ROD SALINGER,

    Plaintiff,

v.                                           Case No. 24-CV-1417-SCD

ANDREW LAWLER,
DOUBLEDAY,
KNOPF DOUBLEDAY PUBLISHING GROUP
PENGIUN RANDON HOUSE LLC

    Defendants.

## DECISION AND ORDER TRANSFERRING CASE
## TO THE WESTERN DISTRICT OF NORTH CAROLINA

    Rod Salinger alleges that Andrew Lawler's 2021 book *Under Jerusalem: The Buried History of the World's Most Contested City* includes defamatory statements against him. Lawler has moved to dismiss Salinger's complaint, arguing that this court lacks personal jurisdiction over Lawler, that Salinger's claim is procedurally barred, and that Salinger's complaint fails to state a claim for relief. I agree that I do not have personal jurisdiction over Lawler. However, rather than dismissing the action, I will transfer the case to the Western District of North Carolina. I will deny Salinger's motion for leave to amend and deny Salinger's motion for leave to file electronically as moot.

## BACKGROUND

    Salinger and Lawler met in 2019 during Lawler's research for *Under Jerusalem*, a book about "archeology and excavations in Jerusalem." ECF No. 15 at 2–3. See ECF No. 1 ¶ 11. Lawler interviewed Salinger for 45 minutes at an office in Jerusalem. *See* ECF No. 1 ¶¶ 6, 10,

11; ECF No. 15 at 2–3. When Lawler published *Under Jerusalem* in November 2021, pages 331 and 332 included seven allegedly defamatory statements about Salinger:

1. "Not long after, Interpol accused the Australian [Salinger] of illegally exporting a door that once led to the room above the traditional Tomb of David, which many Christians; consider the site of Jesus's Last Supper." ECF No. 1 ¶ 25.

2. "'They say it was stolen and that it was ancient' Salinger said later. 'But its [sic] not true; it was not an antique[.]' Nevertheless, the IAA forbade any of its employees from working with him until the matter was resolved." *Id.* ¶¶ 34–37 (The "it" refers to the door referenced above, and the IAA is the Israel Antiquities Authority).

3. "At first, Re'em was encouraged by Goldstein's willingness to allow excavations beneath yeshiva land and Salinger's apparently deep pockets. He backed out when Salinger insisted on a major role in the actual dig.". *Id.* ¶¶ 38, 42 (Dr. Ami Re'em leads the Israel Antiquities Authority for the Jerusalem area).

4. "Like Wyatt, the Australian had grown up a Seventh-day Adventist, the sect that believed the discovery of the Ark '[w]ould signal the start of the End Times'." *Id.* ¶ 45 (Wyatt is likely another figure in the Jerusalem archeology scene. Salinger alleges that he grew up in a Jewish home and later married a Seventh Day Adventist woman. *Id.* ¶¶ 46–47).

5. "There is a Russian spy trying to destroy everything. She is in a very top position. They stole five hundred thousand dollars earmarked for this project. It was a shock to discover that the honey pot was gone." *Id.* ¶¶ 48–49 (Lawler allegedly attributes this statement to Salinger).

6. "'And there are others—treacherous bastards—trying to make secret excavations at nighttime to beat us to the punch.' He paused. 'Everything I tell you is dinky-di' Australian slang for 'on the level.'" *Id.* ¶ 50 (Lawler allegedly attributes this statement to Salinger).

7. "Yehiel Zelinger, an IAA archaeologist who has collaborated with and befriended Wyatt's followers. 'It is an obsession.' He should know; his wife is a psychologist who has worked with Jerusalem Syndrome patients.

   But Spielberg shouldn't shoulder the full blame; the Hollywood director only modernized and amplified an old and powerful legend that mixed spiritual longing with earthly rewards. 'Nothing changes,' said another Israeli archaeologist. 'Crazy people with money come from the West to find treasure—and the locals are ready to exploit them.'" *Id.* ¶¶ 56–57. (Salinger alleges that, here, Lawler infers that Salinger is crazy and being exploited by local Jewish people).

Based on these allegedly defamatory statements, in November 2024, Salinger filed this action in Wisconsin federal court citing violations of Title VI of the Civil Rights Act of 1964 and Wisconsin's defamation statutes, Wis. Stats. §§ 895.05 and 942.01. *Id.* ¶¶ 58–60. Salinger, who is proceeding without the assistance of counsel, mentions Wisconsin only twice in his ten-page complaint:

- "Plaintiff Salinger is a citizen of Wisconsin and has a service address of 2800 Enterprise Way, Appleton WI 54913." *Id.* ¶ 1.

- "Under Jerusalem is for sale on many book stores [sic] and online platforms such as Amazon and Google, and it[] has been widely published with a good number of sales of the Book made in the state of Wisconsin." *Id.* ¶ 20.

On April 18, 2025, Lawler moved to dismiss the complaint. *See* ECF Nos. 14, 15. Salinger had twenty-one days to respond to Lawler's motion. *See* E.D. Wis. L. R. 7(b). When Salinger failed to respond by that deadline, I gave him one last chance to weigh in, setting June 9, 2025, as his deadline. *See* ECF No. 17. Salinger filed his response on July 31, 2025. *See* ECF No. 19. Salinger also moved for leave to file electronically, ECF No. 20, and requested leave to amend the complaint, ECF No. 19 ¶ 12. Salinger and Lawler consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 13.

## MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(2) challenges the court's authority over a defendant. Fed. R. Civ. P. 12(b)(2). Well-pleaded facts alleged in the complaint are taken as true, and factual disputes are resolved in the plaintiff's favor. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). A complaint need not include facts alleging personal jurisdiction, but once the defendant moves to dismiss the complaint under Rule 12(b)(2), the plaintiff

3

"must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782–23 (7th Cir. 2003). "The plaintiff has the burden of establishing personal jurisdiction, and where . . . the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Tamburo*, 601 F.3d at 700 (citing *Purdue Research Found.*, 338 F.3d at 782). In other words, "[t]he affidavit of the party asserting personal jurisdiction is presumed true only until it is disputed. Once disputed, the party asserting personal jurisdiction . . . must prove what it has alleged." S*ee Durukan America, LLC v. Rain Trading, Inc.*, 787 F.3d 1161, 1163–64 (7th Cir. 2015).

## DISCUSSION

Lawler argues that this court lacks personal jurisdiction over him, that Salinger's claim is barred by the statute of limitations, and that Salinger's complaint fails to plead a cause of action because it does not allege actual malice. ECF No. 15 at 1–2. Personal jurisdiction means that certain statutory and constitutional standards must be met before a court can hear a case against an out-of-state defendant. The forum state's law governs personal jurisdiction. Fed. R. Civ. P. 4(k)(1)(A); *Tamburo*, 601 F.3d at 700. "A federal court sitting in Wisconsin may exercise jurisdiction only if it comports with Wisconsin's long-arm statute, Wis. Stat. § 801.05, and Fourteenth Amendment due process." *Webber v. Armslist LLC*, 70 F.4th 945, 953 (7th Cir. 2023). Here, I do not have personal jurisdiction over Lawler because Wisconsin's long-arm statute does not allow it, and the constitutional threshold has not been met.

**I.  Wisconsin's long-arm statute does not allow for personal jurisdiction over Lawler.**

Wisconsin's long-arm statute lists the circumstances in which a court in Wisconsin can bring an out-of-state defendant within its reach. Lawler argued that none of the statute's

4

provisions apply to him, and Salinger didn't respond to Lawler's jurisdictional arguments. *See* ECF No. 15 at 5; *see generally* ECF No. 19. Salinger alleges that he is a citizen of Wisconsin, with a service address in Wisconsin, and Lawler's books were sold in Wisconsin. ECF No. 1 ¶ 1, 20. These allegations are not enough to satisfy any sub-section of Wis. Stat. § 801.05, so Wisconsin's long-arm statute does not allow for personal jurisdiction over Lawler.

Wis. Stat. § 801.05(1) confers jurisdiction over defendants domiciled or engaged in substantial activity in Wisconsin. Lawler submits via affidavit that he lives in North Carolina and does not engage in substantial activity in Wisconsin, and Salinger does not dispute this. *See* ECF No. 14-1 ¶ 1.

Subsection (3) confers jurisdiction "[i]n any action claiming injury to a person or property within or without this state arising out of an act or omission within this state by the defendant." Wis. Stat. § 801.05(3). Salinger alleges that his reputation was harmed. But he doesn't link that injury to an act or omission within Wisconsin by Lawler. *See* ECF Nos. 1, 19. Lawler submits—and Salinger does not dispute—that he did not promote his book in Wisconsin, nor was he responsible for sales or for circulating the book in Wisconsin. ECF No. 14-1 ¶ 8. So, Salinger doesn't show how his injury arose out of an act or omission by Lawler within Wisconsin.

Subsection (4)(a) confers jurisdiction when alleging an in-state injury by an out-of-state act or omission "by the defendant, provided in addition at the time of the injury . . . solicitation or service activities were carried on within this state by or on behalf of defendant." Wis. Stat. § 801.05(4)(a). To illustrate, in *Webber v. Armslist LLC*, defendant Gibbon managed an online platform designed to sell guns in multiple states, including Wisconsin. *Webber*, 70 F.4th at 953. The Seventh Circuit determined that such conduct did not constitute solicitation

5

or service activities under § 801.05(4)(a) because Gibbon had not "anticipated receiving a financial benefit from users in Wisconsin because he made the decision to solicit business in that state." *Id.* at 954. Gibbon wasn't responsible for his company's decision to target online sales in Wisconsin. *Id.* Gibbon designed the website and controlled its operations, but those roles did not support an inference that Gibbon was responsible for the company soliciting business in Wisconsin. *Id.*

So too here, Lawler didn't anticipate receiving a financial benefit from readers in Wisconsin; he didn't decide to specifically target this forum. Lawler's book sold in bookstores in Wisconsin and online platforms that deliver to Wisconsin, but, without more, that does not constitute solicitation or service activities by Lawler or attributable to Lawler.

Because no other subsection of § 801.05 might apply to Salinger's claim, Lawler is not within the grasp of Wisconsin's long-arm statute.

## II. Lawler does not have minimum contacts in Wisconsin.

Even if Lawler were covered by Wisconsin's long-arm statute, the constitutional threshold has not been met. The Fourteenth Amendment mandates that an out-of-state defendant have "minimum contacts" with a jurisdiction before he is haled into court there. *Felland*, 682 F.3d at 673. "Personal jurisdiction may be either general or specific." *Id.* This court has neither over Lawler.

General personal jurisdiction means that a defendant's contacts with a forum state are so extensive that the defendant is "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). "A defendant with 'continuous and systematic' contacts with a state is subject to general jurisdiction there in any action, even if the action is unrelated to those contacts. The threshold for general jurisdiction is high; the contacts must be sufficiently

6

extensive and pervasive to approximate physical presence." *Tamburo*, 601 F.3d at 701 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)) (citations omitted). Lawler resides in North Carolina with no ties to Wisconsin. ECF No. 14-1 ¶¶ 1, 8. Although Salinger alleges that he himself is a Wisconsin citizen, "[t]he Supreme Court has long made clear that the question of personal jurisdiction hinges on the defendant's—not the plaintiff's—contacts with the forum state." *North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023). So, this court does not have general personal jurisdiction over Lawler.

Specific personal jurisdiction over an out-of-state defendant means that "the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Specific personal jurisdiction requires that (1) the defendant purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state; (2) the alleged injury arose out of the defendant's forum-related activities; and (3) personal jurisdiction would comport with traditional notions of fair play and substantial justice. *Tamburo*, 601 F.3d at 702.

In the intentional tort context, purposely directing activities at a forum means the defendant expressly aimed his tortious conduct at the forum state and knew the plaintiff would be injured there. *Id.* at 703 (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)). For example, in *Tamburo v. Dworkin*, one group of defendants posted the plaintiff's Illinois address urging people to harass him and sent threatening emails to the plaintiff "with the knowledge that [he] lived in Illinois and operated his business there." *Id.* at 706. The defendants' goal was reputational and commercial harm to the plaintiff in Illinois. *Id.* at 707. Another

7

defendant in that case facilitated posting those messages on a listserv but did not act "with the knowledge that Tamburo operated his business in Illinois or with the specific purpose of inflicting injury there." *Id.* at 708. The former group of defendants' actions satisfied the express aiming requirement, but the latter defendant's actions did not.

Here, Lawler did not expressly aim his allegedly tortious conduct at Wisconsin or know that Salinger would be injured here. Lawler believed Salinger was an Australian, who lived in Canada, and travelled frequently to Israel. ECF No. 14-1 ¶ 7. Lawler could not have expressly aimed his allegedly tortious conduct at Wisconsin when he didn't know that Salinger had ties here.

The second prong of the specific personal jurisdiction analysis asks whether the plaintiff's injury arose out of or related to the defendant's actions in the forum state. *See Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017). As explained throughout, Lawler did not take any action in Wisconsin, so this so this prong is lacking.

The final inquiry for specific personal jurisdiction asks whether personal jurisdiction would be consistent with traditional notions of fair play and substantial justice. The burden on the defendant, the forum state's interests, the plaintiff's interest in convenient and effective relief, the judicial system's interest in efficient resolution of controversies, and the shared interest of states in furthering substantive social policies are all relevant factors. *Tamburo*, 601 F.3d at 710; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Here, Wisconsin's interest in the dispute is not demonstrably stronger than North Carolina's, which is where the allegedly tortious activity occurred. ECF No. 14-1 ¶ 3. Wisconsin and North Carolina share interests in efficient resolution of controversies and enforcing defamation statutes. Accordingly, none of the elements required for specific personal jurisdiction are met here.

8

Case 1:25-cv-00293-MR-WCM    Document 22    Filed 08/27/25    Page 8 of 11

* * *

Salinger had the burden to go beyond the pleadings and submit affirmative evidence supporting the exercise of personal jurisdiction. Salinger has not met the prima facie standard. Because Wisconsin's long-arm statute has not been satisfied, and the constitutional threshold for specific or general personal jurisdiction has not been met, this court does not have personal jurisdiction over Lawler.

### III.     The interest of justice compels transfer to North Carolina.

As an alternative to outright dismissal, Lawler suggests transferring this action to a federal court in North Carolina, where he would be subject to personal jurisdiction. ECF No. 15 at 9 n.5. The Seventh Circuit has directed that "when federal courts find that they lack jurisdiction, they bear an independent obligation under [28 U.S.C.] § 1631 to consider whether to transfer the case—even if neither party requests transfer." *North v. Ubiquity, Inc.*, 72 F.4th 221, 228 (7th Cir. 2023). "That obligation is quite limited." *Id.* If the court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. 28 U.S.C. §§ 1404 and 1406 govern transfer or dismissal in cases of wrong or improper venue; 28 U.S.C. § 1631 governs transfer or dismissal when a court lacks jurisdiction—including personal jurisdiction. *See North*, 72 F.4th at 227.

Here, the interest of justice compels transfer to North Carolina. "If a plaintiff may, on its own, refile its case in a proper forum, the interests of justice do not demand transfer." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 133 (3d Cir. 2020). "And the inverse . . . is also true." *North*, 72 F.4th at 229. "A compelling reason for transfer is that the

9

Case 1:25-cv-00293-MR-WCM     Document 22     Filed 08/27/25     Page 9 of 11

plaintiff, whose case if transferred is for statute of limitations purposes deemed by section 1631 to have been filed in the transferor court, . . . will be time-barred if his case is dismissed and thus has to be filed anew in the right court." *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999). Salinger can't re-file in North Carolina, where the statute of limitations for defamation claims is one year. N.C. Gen. Stat. § 1-54(3). Salinger filed his claim before Wisconsin's three-year statute of limitation expired. Wis. Stat. § 893.57. *Under Jerusalem* was published on November 2, 2021. ECF No. 15 at 3. Excluding the day of the triggering event, three years later was November 3, 2024, which fell on a Sunday, so the statute of limitation expired on November 4, 2024, which was when Salinger filed his complaint. *See* Fed. R. Civ. P. 6(a); ECF No. 1.

Of note, Salinger failed to respond to Lawler's jurisdictional arguments, but Lawler failed to follow local rules for moving to dismiss against a pro se litigant. *See* Civ. L. R. 12; Civ. L. R. 56(a)(1). Lawler also indirectly challenged Salinger's domicile in Wisconsin, which might impact choice-of-law considerations in the transferee court. *See* ECF No. 15 at 1–2.

### IV. Motion for leave to amend and to file electronically.

Salinger moved for leave to amend his complaint to include only Andrew Lawler as a defendant and "make the issues at stake clearer and more well defined." ECF No. 19 ¶ 12. Lawler opposes this motion. ECF No. 21. I am dismissing the complaint for lack of jurisdiction, so amending the complaint in this court would be futile. Salinger also didn't file a copy of his proposed amended complaint as required by local rules, so he hasn't shown how amendment would cure the personal jurisdiction issue. Civ. L. R. 15(b). Further, Salinger had multiple opportunities to respond. *See* ECF No. 17 at 1. For these reasons, I will deny

Salinger's motion for leave to amend. I will also deny Salinger's motion for leave to file electronically as moot.

## CONCLUSION AND ORDER

In sum, Lawler is not subject to personal jurisdiction in this court. Accordingly, for all the foregoing reasons, the court **GRANTS** Lawler's request to transfer the case to the Western District of North Carolina, ECF No. 15 at 1 n.1. The court **DENIES** the defendant's motion to dismiss, ECF No. 14. The court **DENIES** the plaintiff's request for leave to amend, ECF No. 19 ¶ 12, and **DENIES** as moot the plaintiff's motion for leave to file electronically, ECF No. 20. Finally, based on his request to dismiss claims against the other defendants, I infer that Salinger no longer wants to pursue this action against Doubleday, Knopf Doubleday, and Penguin Randon House. I therefore construe his filings as a motion to voluntarily dismiss the action against these defendants. Any claims against these defendants are therefore dismissed without prejudice.

**SO ORDERED** this 27th day of August, 2025.

*Stephen C. Dries*
_____
STEPHEN C. DRIES
United States Magistrate Judge