IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:25-CV-293-WCM

| ROD SALINGER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF |
| v. | ) | DECISION AND |
| | ) | ORDER |
| ANDREW LAWLER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant's Motion to Dismiss Complaint (the "Motion to Dismiss," Doc. 29); Defendant's Motion for Sanctions (the "Motion for Sanctions," Doc. 44); and Plaintiff's Motion for Leave to File Amended Complaint and for Transfer (the "Motion for Leave to Amend," Doc. 48).

I. Relevant Procedural History

On November 4, 2024, Rod Salinger ("Plaintiff"), appearing *pro se*, filed a Complaint in the United States District Court for the Eastern District of Wisconsin, in case number 2:24-cv-01417-SCD, against Andrew Lawler ("Defendant"). He also named "Doubleday," "Knopf Doubleday Publishing Group," and "Penguin Randon House LLC" (collectively, the "Publisher Defendants") as defendants.

On August 27, 2025, the Hon. Stephen C. Dries, United States

1

Magistrate Judge,[1] found that personal jurisdiction over Defendant was lacking and transferred the case to this district (the "Transfer Order," Doc. 22).[2]

On September 24, 2025, Defendant filed the Motion to Dismiss. Plaintiff responded, and Defendant replied.[3] Docs. 35, 36.

A hearing on the Motion to Dismiss was noticed for December 1, 2025, along with a status conference. However, as described in the Court's previous order, Plaintiff did not appear, and the Court rescheduled the proceedings for January 6, 2026. The undersigned also set a briefing schedule with respect to any motion seeking an award of costs or other appropriate relief in relation to Plaintiff's nonappearance and advised that the Court intended to hear any such motion on January 6, 2026. Doc. 42.

Defendant filed the Motion for Sanctions on December 8, 2025. Docs. 44, 45. Plaintiff did not file any response.

On January 6, 2026, Plaintiff and counsel for Defendant appeared before

---

[1] The parties consented for a United States Magistrate Judge to preside over the matter.

[2] The Wisconsin court read Plaintiff's filings as indicating that Plaintiff wished to dismiss his claims against the Publisher Defendants and dismissed those parties. Plaintiff now states that he did not wish to dismiss them.

[3] Plaintiff's deadline to respond to the Motion to Dismiss was extended through and including October 22, 2025. Plaintiff did not meet that deadline and filed his opposition on October 29, 2025. Doc. 35. Defendant, however, does not object to the Court's consideration of Plaintiff's late-filed response. Doc. 34.

2

the Court and were heard on the Motion to Dismiss and the Motion for Sanctions. At the conclusion of those proceedings, the undersigned took both Motions under advisement.[4]

On January 8, 2026, Plaintiff filed the Motion for Leave to Amend. The next day he filed an affidavit (Doc. 49), which appears to pertain to all pending motions.

## II. Plaintiff's Allegations

Plaintiff's Complaint alleges as follows:

Plaintiff is a director of a not-for-profit organization called Peace Strategies Foundation ("Peace Strategies") "which is involved in a proactive peace-making effort in the Middle East." Doc. 1 at ¶ 6.

Plaintiff and Defendant met in 2019 in Jerusalem, Israel. Doc. 1 at ¶ 11. During that meeting, which lasted approximately 45 minutes, Defendant introduced himself as a writer who was preparing an article on archaeology in Jerusalem for National Geographic. Id. at ¶ 11-12. Defendant did not mention that he was writing a book. Id. at ¶ 12.

On November 2, 2021, Defendant's book, entitled Under Jerusalem, was

---

[4] At the beginning of the hearing, and in light of uncertainty in the record, the Court inquired as to whether there was unanimous consent regarding the disposition of this matter by a United States Magistrate Judge and gave the parties an opportunity to confer outside of the Court's presence. Thereafter, the parties advised that there was unanimous consent and submitted an executed Joint Stipulation confirming their consent. Doc. 46.

published. Id. at ¶ 16, 14. Plaintiff contends that Under Jerusalem included seven allegedly defamatory statements about him. Id. at ¶ 17.

III. Discussion

   A. The Motion for Leave to Amend

By this Motion, Plaintiff seeks leave to file an Amended Complaint as well as an order transferring this case back to the United States District Court for the Eastern District of Wisconsin. Alternatively, Plaintiff seeks leave to file his Amended Complaint and requests that Wisconsin's three-year statute of limitations be applied to his claims in this Court.

As an initial matter, Plaintiff's motion is untimely; it was filed after the Motion to Dismiss had been pending for more than three months and subsequent to a hearing on the Motion to Dismiss (which hearing itself had to be rescheduled because Plaintiff failed to appear at the initial setting).

More substantively, the Motion for Leave to Amend is futile. As noted above, the United States District Court for the Eastern District of Wisconsin transferred this matter to this Court after concluding that it did not have personal jurisdiction over Defendant. Plaintiff has identified no legal basis upon which the undersigned could now transfer the case back to Wisconsin. Further, while the Motion for Leave to Amend makes clear that Plaintiff wants his defamation claim to be considered under Wisconsin's three-year statute of limitations – whether in this district or back in Wisconsin – for the reasons

4

discussed below, Wisconsin law does not apply.

Accordingly, the Motion for Leave to Amend will be denied.

### B. The Motion to Dismiss

Defendant contends that Plaintiff's claim is time-barred. In addition, he argues that Plaintiff has failed to state a claim for defamation because Plaintiff has not alleged that Defendant acted with actual malice.[5]

#### 1. Timeliness of Plaintiff's Claim

In his complaint, Plaintiff alleges that Under Jerusalem was first published on November 2, 2021. Plaintiff filed suit in the Eastern District of Wisconsin on November 4, 2024.

Defendant argues that the law of North Carolina governs this case and that, because North Carolina law imposes a one-year statute of limitations for defamation claims, Plaintiff's claim is time-barred. See N.C. Gen. Stat. § 1-54(3).

Plaintiff concedes that if North Carolina law applies, his claim is untimely. He argues, though, that Wisconsin law controls and that under Wisconsin's three-year statute of limitations, his claim is not time-barred. See

---

[5] Defendant also requests that to the extent Plaintiff's Complaint can be construed as asserting a claim under "Title VI of the Civil Rights Act of 1964," see Doc. 1 at ¶ 9, that such a claim be dismissed. However, Plaintiff appears to acknowledge that he has attempted to bring only a claim for defamation and the undersigned does not read Plaintiff's Complaint as asserting any other type of claim.

5

Wis. Stat. § 893.57.

### a. Governing Law

In the Transfer Order, the Eastern District of Wisconsin determined that it could not exercise personal jurisdiction over Defendant. Doc. 22 at 9. Rather than dismissing the case, the court transferred it to this district pursuant to 28 U.S.C. § 1631. Id. at 9-10.

Section 1631 provides that:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

The Transfer Order noted that, in the event Plaintiff's Complaint were to be dismissed (in Wisconsin) for lack of personal jurisdiction, Plaintiff could not re-file his suit in North Carolina in light of North Carolina's one-year statute of limitations Doc. 22 at 10. The Transfer Order also indicated that Plaintiff's suit was timely under Wisconsin's three-year statute of limitations.

6

Id. at 10.

Now, Plaintiff appears to argue that the Transfer Order requires this Court to determine the timeliness of Plaintiff's claim using Wisconsin law.

The Court, however, does not agree with this interpretation of the language, or effect, of the Transfer Order. That is, the undersigned does not read the Transfer Order as attempting to require the application of Wisconsin law to Plaintiff's defamation claim and otherwise concludes that North Carolina should be applied.

In that regard, Section 1631 provides that when an action is transferred, it "shall proceed <u>as if</u> it had been filed in…the court to which it is transferred <u>on the date upon which it was actually filed in or noticed for the court from which it is transferred</u>." Emphasis added. In other words, the transferee court will view the case as having been filed on the date it was originally filed in the transferor court. What that means here is that the transfer pursuant to Section 1631 had the effect of retaining Plaintiff's original filing date of November 4, 2024.

But whether Plaintiff's claim is timely is a separate question, and one that must be answered "as if" this matter had been filed originally in this district.

On that point, courts have held that Section 1631 requires a transferee court to apply the substantive and choice of law rules of the transferee's

7

jurisdiction. See Viernow v. Euripides Dev. Corp., 157 F.3d 785, 793 (10th Cir. 1998) ("in cases where the transferor court determines that it lacks personal jurisdiction…the transferee jurisdiction's substantive and choice of law rules apply so long as the transfer did in fact cure a jurisdictional defect…the proper course of action since the enactment of 28 U.S.C. § 1631 is to transfer pursuant to that statute, which requires that the transferee court apply that jurisdiction's law.") (internal citations omitted); SmithKline Beecham Corp. v. Abbott Lab'ys, No. 1:15CV360, 2016 WL 922792, at *3 (M.D.N.C. Mar. 10, 2016) ("While the Fourth Circuit has not ruled on this issue, other courts have held that…when a case is transferred to cure jurisdiction, the law of the transferee forum must apply."); see also LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n, 830 F.2d 522, 526 (4th Cir. 1987) (explaining that courts "avoid forum shopping" by applying the law of the transferee court, not the law of the transferor court, when the plaintiff improperly filed in the transferor court); Kuennen v. Stryker Corp., 1:13-CV-00039, 2013 WL 5873277, at *2 (W.D. Va. Oct. 30, 2013) ( "where the transferor court did not have personal jurisdiction over the defendant . . . the transferee court must apply the law of the state in which it is held, rather than that of the transferor state") (citing Gimer v. Jervey, 751 F. Supp. 570, 576 (W.D. Va. 1990), aff'd, 948 F.2d 1280 (4th Cir. 1991))).

    Consistent with these authorities, the undersigned finds that North

Carolina law, including North Carolina's statute of limitations, governs Plaintiff's claim.

### b. Application of North Carolina Law

Under North Carolina law, the one-year limitations period applicable to a defamation claim begins to run from the date the subject statement is published. See Horne v. Cumberland Cnty. Hosp. Sys., Inc., 228 N.C. App. 142, 150 (2013) ("[A] defamation action must be commenced within one year from the date the action accrues, which is the date of the publication of the defamatory words—irrespective of the date of discovery by the plaintiff.").

Here, Under Jerusalem was published on November 2, 2021. Id. at ¶ 16, 14. Plaintiff filed suit approximately three years later, on November 4, 2024.[6]

In his response to the Motion to Dismiss (Doc. 35-1) and during the January 6, 2026 hearing, Plaintiff asserted that a second publication of Under Jerusalem occurred on September 26, 2023 and that this date should be

---

[6] To the extent Plaintiff is attempting to argue that additional shipments of the edition of the book that was published on November 2, 2021 extended the statute of limitations, this argument is foreclosed by the single publication rule. Restatement (Second) of Torts § 577A (1977) ("[a]ny one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication."); Lokhova v. Halper, 995 F.3d 134, 142 (4th Cir. 2021) (the "great majority of states … now follow the single publication rule.") (quoting Morrissey v. William Morrow & Co., 739 F.2d 962, 967 (4th Cir. 1984)).

considered for purposes of determining the timeliness of Plaintiff's claim.[7] Defendant appears to acknowledge that a paperback edition of the book was published in September of 2023. See Doc. 36 at 5 (referring to the November 2, 2021 publication as the original hardcover edition and the September 26, 2023 publication as a paperback edition).

This information, though, does not change the result. Allegations regarding a September 2023 publication do not appear in Plaintiff's Complaint, but even if Plaintiff had pled (or was now given leave to plead) a September 2023 publication date, Plaintiff's claim would still be untimely, since Plaintiff filed his case in Wisconsin more than one year later.

The Court therefore finds that Plaintiff's defamation claim is time-barred and will dismiss Plaintiff's Complaint with prejudice.

### 2. Defendant's Remaining Arguments

In light of the Court's ruling with respect to the statute of limitations, the Court does not reach Defendant's additional arguments for dismissal.

### C. The Motion for Sanctions

Rule 16(f) authorizes courts to sanction parties for "fail[ing] to appear at a scheduling or other pretrial conference" or "fail[ing] to obey a scheduling or

---

[7] Plaintiff's Motion for Leave to Amend references a different date—September 23, 2023—as the date Under Jerusalem was "republished in paperback." Docs. 48 at 2; 48-1 at 1 & 2.

10

other pretrial order." Rule 16(f) further provides that "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees— incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."

Here, Defendant seeks expenses and attorneys' fees in the amount of $2,832.88 in connection with his attorneys' appearance at the December 1, 2025 hearing.

Plaintiff asserts that he was unable to appear that day as a result of adverse weather conditions at his location in Alaska.

Defendant questions the accuracy of Plaintiff's representations.

In view of Plaintiff's *pro se* status, the information provided by him both during the January 6, 2026 hearing and subsequently in his affidavit, as well as the Court's determination that Plaintiff's Complaint should be dismissed with prejudice, the Court will deny the Motion for Sanctions.

### IT IS THEREFORE ORDERED THAT:

1. Defendant's Motion to Dismiss Complaint (Doc. 29) is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.
2. Defendant Andrew Lawler's Motion for Sanctions (Doc. 44) is **DENIED.**

3. Plaintiff's Motion for Leave to File Amended Complaint and for Transfer (Doc. 48) is **DENIED**.

4. The Clerk is **RESPECTFULLY DIRECTED** to enter a judgment consistent with this Memorandum of Decision and Order.

Signed: January 22, 2026

W. Carleton Metcalf
United States Magistrate Judge